GERALD SINGLETON, SBN 208783
BRODY A. McBRIDE, SBN 270852
SINGLETON LAW FIRM, ACP
115 West Plaza Street
Solana Beach, California  92075
Tel.        (760) 697-1330
Fax.       (760) 697-1329
Email:     gerald@geraldsingleton.com
           brody@geraldsingleton.com

Attorneys for Plaintiffs MARTY and MAGGIE EMMONS

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTY and MAGGIE EMMONS,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF ESCONDIDO, EPD Chief of Police CRAIG CARTER, Former Acting EPD Chief of Police COREY MOLES, EPD Sgt. KEVIN TOTH, EPD Officers ROBERT CRAIG, HUY QUACH, JAKE HOUCHIN, and JOSEPH LEFFINGWELL; and DOES 1-50 inclusive.<br><br>    Defendants. | Case No. 3:14-cv-1662-JM-DHB<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge:   Hon. Jeffery T. Miller<br>Dept.:    5D<br>Date:     January 11, 2016<br>Time:    10:00 a.m.<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiffs respectfully submit this Reply in support of their Motion for Summary Judgment, (ECF No. 34).

In opposition to Plaintiffs' Motion for Summary Judgment, Defendants primarily take issue with Plaintiffs' Statement of Undisputed Facts, arguing some facts are without evidentiary support and/or misstated, while other facts are undisputed yet irrelevant.  (ECF No. 35 at 2-7.)

Defendants thereafter argue that they have offered undisputed and compelling evidence sufficient to demonstrate that two exceptions to the warrant requirement justified their treatment of Plaintiffs (i.e., the emergency exception and voluntary

1

consent), while Plaintiffs have failed to present evidence sufficient to demonstrate any of Defendants are liable under 42 U.S.C. § 1983. (Id. at 7-16.) Defendants then argue Plaintiffs' Motion for Summary Judgment should be denied because Defendants are entitled to qualified immunity, (id. at 16-25), after which they finally argue no defendant is liable for the conduct of any other defendant, (id. at 25-26).

Plaintiffs address Defendants' arguments in turn.

## I. Undisputed Facts

Defendants argue Plaintiffs are merely "criticizing" the responding officers for not doing "certain things" during what Defendants now characterize as an "investigation of the 9-1-1 call"—instead of the "exigent circumstances" the responding officers claimed existed as they repeatedly threatened to kick down the door to Maggie's apartment. (See ECF No. 35 at 2.) Plaintiffs, however, are not merely criticizing the officers' failure to do "certain things." Plaintiffs criticize the officers failure to undertake any reasonable investigation to determine whether there was, in fact, an ongoing emergency that required the officers to violently and repeatedly demand entry into Maggie's apartment, which demands resulted in the unlawful arrest of (and use of excessive force on) Marty and the unlawful search of Maggie's apartment.

Turning to the issues of fact raised in Defendants' Opposition, Defendants first concede that none of the responding officers attempted to contact Douglas's mother for more information at any point during the incident. (See ECF No. 35 at 2.) Defendants concede the responding officers did not, at any point during the incident, attempt to interview any neighbor or other potential witnesses that might have corroborated whether anyone had, in fact, heard a verbal altercation between two female roommates followed by a scream. (See id. at 3.) Defendants argue nothing indicates Maggie's neighbors knew anything about the event; yet Defendants repeatedly rely on the fact that screaming was reported. (See id. at 2-3.) Though, the

1  fact that Defendants believe neighbors in a compact apartment building would not
2  have heard screaming further demonstrates the absurdity of the responding officers'
3  failure to confirm whether there was an ongoing emergency upon their arrival.  Even
4  Maggie's statement to police that her children may have screamed when she told them
5  they could not go to the pool unattended (which Defendants also highlight, <u>see id.</u> at
6  3) did not corroborate the 911 report of two female roommates having a verbal
7  altercation.  Douglas's mother did not report screaming children; she reported only
8  that two children were present.

9        Defendants concede the responding officers largely ignored Douglas, blaming
10 her for not making an "effort to come up to the apartment to assist officers," when, in
11 fact, the officers told Douglas–the potential victim–that <u>the matter did not concern her</u>.
12 (ECF No. 35 at 3.)  Even if the officers were somehow unable to ask for and confirm
13 Douglas's identification while they waited for nearly <u>fifteen</u> minutes for other officers
14 and a supervisor to arrive, Douglas was certainly a potential witness who was within
15 earshot of any screaming that may have occurred and thus would have been a valuable
16 source of information had the officers actually intended to investigate whether there
17 was an ongoing emergency upon their arrival.  The officers were so determined to
18 search Maggie's apartment, however, they failed even to identify the person they were
19 sent to check on until after they searched Maggie's apartment.

20       Defendants claim "Maggie knew exactly why they were there; she told Officer
21 Craig that her children were screaming."  (ECF No. 35 at 3.)  The officers were not,
22 however, dispatched because of screaming children.  They were dispatched because
23 Douglas's mother reported a verbal altercation between Douglas and her female
24 roommate, Maggie.  It is undisputed that not a single responding officer told anyone
25 present at Maggie's apartment the reason they were dispatched was because Douglas's
26 mother called to report a potential disturbance.
27 //

Defendants claim they did not behave as other officers have behaved in cases where the emergency was held to apply, because their behavior was "consistent with trained police officers" and "demonstrate the importance of having a strategy." (ECF No. 35 at 4.) These vague and unsupported assertions, however, do not explain the length of time the officers stood at Maggie's door violently demanding entry, all the while ignoring the one person whose welfare they were sent to check. Neither do these assertions explain why, if Maggie was so insistent on the officers obtaining a warrant, the officers could not have simply obtained a warrant.

Defendants go to great lengths to highlight a prior instance of Escondido Police Officers being dispatched to Maggie's apartment because of a verbal altercation that Maggie reported between Maggie and her husband. (ECF No. 35 at 5.) Defendants argue this prior incident gave them cause, during this incident, to demand entry into Maggie's apartment. Here, however, there was simply no indication of an ongoing emergency involving Maggie's husband—much less so any indication that Maggie's husband was even present. The only civilian male presence during this incident was Marty, who Officer Craig believed was trying to "talk some sense into [Maggie]." Indeed, Defendants acknowledge Maggie's assertion that she was on the phone with her husband during the time she was demanding that the officers obtain a warrant to search her apartment. (ECF No. 35 at 6.)

Defendants argue Plaintiffs have misrepresented Craig's testimony, yet Defendants acknowledge Craig was not concerned with confirming Maggie's identity or role in any emergency at the point when Craig should have been investigating whether there was an ongoing emergency, and that Craig testified: "I just wanted to have her let me in." (ECF No. 35 at 6.) More broadly—given their non-emergent response (i.e., no lights and sirens), lack of any reasonable investigation, and 15 minute delay in conducting any search of Maggie's apartment—whether the responding officers acted as if they perceived an emergency is disputed.

1    As to Marty's arrest, Defendants argue reliance on Douglas's testimony is
2 misplaced because it is contradicted by other evidence. (ECF No. 35 at 4.) Though,
3 whether reliance on evidence is misplaced is not a question for summary judgment,
4 where the issue is whether undisputed material facts entitle a party to judgment as a
5 matter of law. See Fed. R. Civ. P. 56.

## II.    The Officers Violated Maggie's Fourth Amendment Rights

Defendants argue the officers' demands to enter and search Maggie's apartment "do not constitute a cognizable constitutional violation as no actual search of the apartment or seizure of Maggie resulted." (ECF No. 35 at 8.) This is simply inaccurate, as the crux of Maggie's Fourth Amendment claim is that the officers' repeated and violent demands to search her apartment, along with the unlawful arrest of (and use of excessive force on) her father, along with concern for her screaming and frightened children, caused Maggie to involuntarily consent to a search of her apartment. Defendants' attempt to minimize the unjustified intrusion into Maggie's apartment as brief ignores the Supreme Court's teaching that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980).

Defendants argue the emergency exception to the warrant requirement excused their conduct. (ECF No. 35 at 9-12.) As set forth in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, however, the emergency exception does not apply here. (See ECF No. 36 at 2-8.)

Defendants next argue Maggie consented to the search of her apartment. (ECF No. 35 at 12.) As set forth in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, however, Maggie did not voluntarily consent to any search of her apartment. (See ECF No. 36 at 8-9.)

//
//

### III. The Officers Used Excessive Force in Unjustifiably Detaining and Arresting Marty

Defendants argue there was probable cause to arrest Marty and that any force used in arresting Marty was reasonable. (ECF No. 35 at 13-16.) As set forth in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, however, there was no probable cause to arrest Marty for violation of California Penal Code section 148(a)(1), Marty's arrest was a result of the responding officers' own unreasonable conduct, and any force used to arrest Marty was therefore excessive. (See ECF No. 36 at 9-10.)

### IV. The Officers Are Not Entitled to Qualified Immunity

Defendants argue the responding officers are entitled to qualified immunity as to the search of Maggie's apartment, Marty's arrest, and the use of force on Marty. (ECF No. 35 at 16-25.) As set forth in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, however, the officers are not entitled to qualified immunity because the officers violated Plaintiffs' clearly established constitutional rights. (See ECF No. 36 at 10-11.)

### V. The Officers Who Did Not Physically Arrest Marty or Search Maggie's Apartment Are Themselves Liable

Defendants finally argue no defendant is liable for the conduct of any other defendant. (ECF No. 35 at 25-26.) Though, as set forth in Plaintiffs' own Motion for Summary Judgment, along with Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, the officers who did not physically arrest Marty or search Maggie's apartment are themselves liable for failing to appropriately intervene or supervise. (See ECF No. 36 at 11-12.)

//
//
//

## VI. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment, (ECF No. 34), should be granted, and Defendants' Motion for Summary Judgment, (ECF No. 33, should be denied.

Dated: January 4, 2016                    SINGLETON LAW FIRM, APC

By:   */s/ Brody McBride*
         Brody McBride
Attorneys for Plaintiffs MARTY and MAGGIE EMMONS