**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTY EMMONS and MAGGIE EMMONS,<br><br>        Plaintiffs,<br>    v.<br><br>CITY OF ESCONDIDO; EPD Chief of Police CRAIG CARTER; Former EPD Chief of Police JIM MAHER; EPD Sgt. KEVIN TOTH; EPD Officers ROBERT CRAIG, HUY QUACH, JAKE HOUCHIN and JOSEPH LEFFINWELL,<br><br>        Defendants. | CASE NO. 14cv1662 JM(DHB)<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFFS |

Plaintiffs Marty Emmons ("Mr. Emmons") and his daughter Maggie Emmons ("Ms. Emmons") move for summary judgment on their First, Second, and Third causes of action asserted in the First Amended Complaint ("FAC"). Defendants City of Escondido, Craig Carter, Kevin Toth, Robert Craig, Huy Quach, Jake Houchin and Joseph Leffinwell oppose the motion and separately move for summary judgment on the same claims. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for decision without oral argument. For the reasons set forth below, the court grants summary judgment in favor of Defendants Craig Carter, Kevin Toth, Richard Craig, Huy Quach, Jake Houchin and Joseph Leffinwell, and against Plaintiffs,

on the First, Second, and Third causes of action.

At the outset, the court notes that the evidentiary record contains video and audio recordings of the underlying incident at issue. While not a panacea, these recordings provide significant context and color to the events which occurred on May 27, 2013. The body-worn camera provides a technological aide to better serve the community by protecting both police officers and citizens. An accurate depiction of the contacts between the police and community improves public safety, provides an objective means for evidence gathering, and serves as a valuable training tool for police officers.

## BACKGROUND

On May 27, 2014, Plaintiffs commenced this federal question action by alleging six causes of action for violation of the Civil Rights Act, 42 U.S.C. §1983, and one claim for violation of the Bane Act, Cal. Civil Code §§52.1 and 52.3. Precisely one year prior to filing the complaint, on May 27, 2013, Plaintiffs allege that Defendants violated their civil rights when police officers responded to a 911 call. On that date, the mother of Ms. Emmons' roommate, Trina Douglas, while speaking with her daughter, Ametria Douglas ("Ms. Douglas"), called 911 to report what she believed was an on-going fight at the apartment. Trina Douglas "called 911 in the hopes that someone would check on the well-being of her daughter." (FAC ¶23).

Officers Craig and Houchin were dispatched to conduct a welfare check on the occupants of the residence. Upon arrival the Officers encountered Ms. Douglas, the subject of the 911 call, in the pool with Ms. Emmons's children. Ms. Douglas allegedly told the officers that "she was fine and there was no need to go inside Ms. Emmons's residence." Nevertheless, the Officers proceeded to the door of Ms. Emmons's residence. Unbeknownst to the Officers, Mr. Emmons was inside the residence with his daughter.

Ms. Emmons denied the Officers request to enter the residence. Ms. Emmons spoke to the Officers through a window on the side of her residence and continued to refuse entry to the residence. The Officers insisted on entering the premises and

informed Ms. Emmons that additional police officers would respond and would force entry into the residence unless they were allowed to enter the residence. (TAC ¶29). Ms. Emmons insisted that the Officers needed a search warrant before entering the home. (Compl. ¶32). By this time, Sergeant Toth and Officers Leffinwell and Quach responded to the call for support.

Mr. Emmons then "unlocked and opened the front door, and exited his daughter's residence through the front door. Officer Craig stepped up and demanded that Mr. Emmons not close the door. As Mr. Emmons stepped out, Officer Craig then attempted to force the door open with his foot. Mr. Emmons brushed past Officer Craig and closed the door behind him." (TAC ¶35). Officer Craig then grabbed Mr. Emmons and forced him to the ground, injuring his back. (TAC ¶¶36, 37). The Officers then entered and searched the residence.

Mr. Emmons was arrested and cited for violation of Penal Code §148(a) for resisting and delaying a peace officer and then released. (FAC ¶44). The District Attorney's Office dismissed the case against Mr. Emmons in February 2014.

Based upon this generally described conduct, Plaintiffs allege six civil rights claims: (1) unlawful seizure, arrest, and detention; (2) excessive force; (3) unreasonable search without a warrant; (4) municipal liability under Monell; (5) failure to train; and (6) failure to supervise and discipline. Plaintiffs also allege a single state law claim for violation of the Bane Act. The parties have jointly moved to dismiss the Bane Act claim and to dismiss Defendant Huy Quach as a party. (ECF 22).

## DISCUSSION

**Legal Standards**

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes

1  demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,
2  477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that
3  the moving party support its motion with affidavits or other similar materials negating
4  the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on
5  the mere allegations or denials of a pleading, but must "go beyond the pleadings and
6  by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and
7  admissions on file' designate 'specific facts showing that there is a genuine issue for
8  trial.'" Id. at 324 (citation omitted). The opposing party also may not rely solely on
9  conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040,
10 1045 (9th Cir. 1989).

11  The court must examine the evidence in the light most favorable to the non-
12 moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt
13 as to the existence of any issue of material fact requires denial of the motion. Anderson
14 v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). On a motion for summary judgment,
15 when "'the moving party bears the burden of proof at trial, it must come forward with
16 evidence which would entitle it to a directed verdict if the evidence were
17 uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)
18 (emphasis in original) (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d
19 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992)).

**Qualified Immunity**

The Supreme Court recently summarized the doctrine of qualified immunity.

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. ——, ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al–Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Put simply,

qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

"We have repeatedly told courts ... not to define clearly established law at a high level of generality." al–Kidd, supra, at 742, 131 S.Ct. 2074. The dispositive question is "whether the violative nature of particular conduct is clearly established." Ibid. (emphasis added). This inquiry " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " Brosseau v. Haugen, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam ) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." 533 U.S., at 205, 121 S.Ct. 2151.

Mullenix v. Luna, – U.S. – , 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015).

**The Motion**

The parties cross-move for summary judgment on the First (False Detention/Arrest), Second (Excessive Force), and Third (Unlawful Search) Causes of Action asserted against the individual Defendants. The court reviews the undisputed evidentiary record - with focus on the events leading up to Plaintiffs' claims - before identifying whether the specific Fourth Amendment rights at issue were violated and/or are clearly established.[1]

On May 27, 2013, at around 2:30 p.m., the Escondido Police Dispatch received a 911 call from Trina Douglas, the mother of Ms. Douglas, Ms. Emmons's roommate. Trina Douglas reported that she lived in Los Angeles and was speaking with her daughter when Ms. Emmons started a fight. Trina Douglas could hear her daughter screaming for help when the telephone line went dead. She tried to call back but no one answered the telephone. Trina Douglas also informed dispatch that there were two children in the home.

At around 2:40 p.m., Defendant Officers Houchin and Craig were dispatched to

---

[1] The video recording of the incident plays an instrumental role in establishing the undisputed evidentiary record.

1  Ms. Emmons's apartment, a second floor unit. They received the following dispatch
2  on the patrol unit computer:

> WC [Welfare Check] on RP's [Reporting Party] 24 yo daughter Ametria Douglas. RP was speaking to daughter on phone. Daughter's female roommate came home, started some kind of 415. Was screaming and jumping to Ametria. Ametria screamed into phone for her mother to help, then phone disconnect. No answer on call back. Two children also in resd.

A "415" is a common abbreviation for California Penal Code §415 and used to cover diverse events such as fights, arguments, and other disturbances. Officer Craig viewed the telephone call as an emergency situation and was concerned for the welfare of the occupants of the apartment. About one month earlier, Officer Houchin responded to a 911 call from Ms. Emmons at the same apartment where she reported that her husband had injured her. Officer Houchin was involved in taking the domestic violence report.

  Shortly thereafter, the officers, dressed in uniform, activated their body video cameras, and Officer Craig knocked on the door while Officer Houchin contacted Ms. Emmons at a side window adjacent to the walkway. Ms. Emmons refused to open the door to permit the officers to perform a welfare check walk-through the apartment. After about 1 ½ minutes, a request was made for additional assistance should a forced entry into the apartment become necessary. After about 6 minutes at the scene, Ms. Emmons did inform the officers that her boys had been screaming earlier when she threatened to hit them.

  While the officers were at the apartment, a woman at the pool with two children asked the police what was happening. One unidentified officer responded that "this doesn't concern you." The woman responded that she was Ametria Douglas and lives in the apartment. She said, "I live here. You can leave. There's no reason for you to be here anymore. You can see I'm fine, and I'm with the boys. Everything is fine." Officer Craig testified that Ms. Douglas's manner of reporting and demeanor raised a "red flag" that was inconsistent with there being no problem at the apartment. The

officers did not confirm Ms. Douglas's identify and relationship to the apartment until after the events giving rise to Plaintiffs' claims.

The officers asked Ms. Douglas to come to the apartment and let them do a welfare check or talk to Ms. Emmons. From the window, Ms. Emmons told Ms. Douglas not to speak with the police. She continued to refuse entry to the police. Mr. Emmons also spoke with the police from the window. He told the police that he and his daughter were the only occupants of the apartment.

About 9 - 10 minutes after arriving on the scene, Mr. Emmons unlocked and opened the door. Officer Craig instructed Mr. Emmons to not close the door, to raise his hands, and to get on the ground. Mr. Emmons did not hear the command to not close the door. Officer Craig was also aware of the earlier domestic violence incident at the apartment and did not know the identity of the individual who just exited the apartment. As Mr. Emmons exited, he brushed past Officer Craig who was in the process of arresting him for violation of Penal Code §148 because he closed the door when instructed not to. Officer Craig then grabbed Mr. Emmons's arm, told him to get to the ground, placed him on the ground, and then handcuffed him. Officer Craig did not display any weapon or strike or threaten him. Within about two minutes of securing Mr. Emmons, Officer Craig helped Mr. Emmons to stand-up. Mr. Emmons testified that he was tackled to the ground.

Defendant Officers Toth and Leffingwell arrived at the scene by the time of Mr. Emmons's arrrest and Officer Toth spoke with Mr. Emmons to see if he wanted to sit down. While this conversation was on-going, Officer Leffingwell, a specially trained Psychological Emergency Response Team Officer ("PERT"), spoke with Ms. Emmons through the window. He was unaware of the previous unsuccessful efforts to gain entrance to the apartment. Shortly thereafter, Ms. Emmons unlocked the door and told the officer "to walk anywhere you want to walk." The walk-through of the apartment lasted for about one minute.

The Search of the Apartment

Of course, an unconstitutional entry into one's home constitutes "paradigmatic" action under the Fourth Amendment, Michigan v. Tyler, 436 U.S. 499, 504 (1978), whether to obtain evidence or to search for potential injured victims. The Fourth Amendment demands that government officials obtain consent, possess a warrant, or demonstrate exigent circumstances before entering one's home. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).

Here, Ms. Emmons cannot prevail on her illegal search claim for two different reasons. First, Plaintiff fails to identify any authority which clearly establishes that police officers may not enter a home to conduct a welfare check once an emergency telephone call is placed to 911, the caller indicates that an altercation is in process, the caller requests help, the telephone line goes dead and the caller does not answer a 911 callback, officers arrive at the scene and the occupant of the home, a recent victim of domestic abuse, refuses to allow the officers to enter the home to conduct a welfare search. It is well-established that the "emergency doctrine allows law enforcement officers to enter and secure premises without a warrant when they are responding to a perceived emergency." United States v. Stafford, 416 F.3d 1068, 1073 (9th Cir. 2005).

Plaintiff argues that the "officers had no reasonable grounds to believe there was an emergency at hand and an immediate need for their assistance for the protection of life or property." (Oppo. at p.21:12-14). Plaintiff argues that officers must first obtain independent confirming evidence before acting on an emergency call like that in United States v. Brooks, 367 F.3d 1128 (9th Cir. 2004), where the police heard loud fighting coming from the hotel room when they arrived on site, or United States v. Brown, 392 Fed. Appx.515 (9th Cir. 2010), where two 911 emergency calls were placed concerning the same event, and not just one call. These authorities are not helpful to Plaintiff. The cited authorities simply fail to provide sufficient notice that the welfare check on Plaintiff's apartment under the circumstances of this case did not fall within the traditional exigent circumstances exception to the warrant requirement of the Fourth

Amendment.

The second reason Plaintiff's argument fails is that she gave her consent to Officer Leffingwell to conduct a welfare check of the apartment. Plaintiff fails to establish a Fourth Amendment violation. The Defendants' undisputed evidence shows that Officer Leffingwell, a trained PERT officer, spoke with Ms. Emmons through the window and she told him that he could walk through the apartment. While coercion is undoubtably a question of fact whenever there are genuine issues of material fact, Plaintiff does not present any substantial evidence of coercion, including any evidence of the standard indicia of coercion ( i.e there is no evidence that force, weapons, shouts or impermissible threats or promises were used by Officer Leffingwell to gain access to the apartment). Rather, Plaintiff argues, without citation to the record or legal authority, that her consent was coerced because she "was in fact terrified for the safety of her father and children who were at this point screaming from the pool in response to the officers arresting their grandfather." (Oppo. at p.9:4-6). Evidence that Plaintiff "felt like she didn't have a choice," or "did not want to let any officer into her home," or was motivated because the police told her (lawfully) that "they were going to bust down" the door if she did not allow a welfare check, (Plfs Motion at p.12:3-12), does not negate Plaintiff's consent nor create a genuine issue of material fact regarding the voluntariness of Plaintiff's consent. Plaintiff's subjective beliefs and prejudices are not relevant considerations under the totality of the circumstances test of the Fourth Amendment. See Illinois, 497 U.S. 177, Mincey v. Arizona, 437 U.S. 385, 392 (1978).[2]

---

[2] Ms. Emmons also claims that the officers did not explain until late in the series of events why they came to her apartment. While Ms. Emmons may not have understood why the officers were there until later, the body camera video clearly shows that the officers repeatedly and exhaustively explained their presence at the site. During this time, the officers were consistently professional and courteous in their discussions with Plaintiff. Some of the first words uttered by the officers were to explain that they were there to conduct a welfare check on the occupants of the apartment. (Notice Lodgement, Exh. 1). The video also reveals that the officers attempted to de-escalate the situation.

Finally, the court reject's Plaintiff's arguments that the Fourth Amendment was violated because (1) the police officers did not reasonably believe there was an emergency (i.e. sirens were not employed by the police while on route to the apartment, Officer Houchin called for other officers and a supervisor instead of immediately entering the apartment) and (2) the police officers could have, and should have, conducted a more thorough investigation before seeking to enter the apartment (i.e. Officers Craig and Hutchin could have listened to the 911 tape themselves, called Ms. Douglas's mother to learn more about the incident, asked more questions of Ms. Douglas while at the pool, interviewed the neighbors to discover more information, (Reply at p.2:19-27)). As set forth above, a constitutional right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Reichle v. Howard 566 U.S. __, __, 132 S.Ct. 2088, 2093 (2012). Plaintiff's failure to cite legal authorities in support of the circumstances of this case is fatal to this claim.

In sum, because Plaintiffs have failed to establish that Defendants, or any of them, violated any clearly established cognizable right under 42 U.S.C. §1983, the court grants summary judgment in favor of all Defendants and against Plaintiff Ms. Emmons on the unlawful search claim (Count 3).

False Detention/Arrest

In a one-half page argument, Mr. Emmons moves for summary judgment on both the false arrest and excessive force claims. (Motion at p.23:9-25). Mr. Emmons contends that he did not disobey the Officers and that taking him to the ground after his arrest constituted excessive force. The court concludes that Plaintiff fails to establish any genuine issue of material fact on the question of whether the arrest of Mr. Emmons violated clearly established law.

To prevail on the false arrest claim under §1983, one must establish that an arrest was made without probable cause. See Cabrera v. City of Huntington Park, 159 F.3d

374, 380 (9th Cir.1998) ("To prevail on his section 1983 claim for false arrest ... [the plaintiff] would have to demonstrate that there was no probable cause to arrest him."). "Probable cause exists when the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the plaintiff had committed or was committing an offense." Hart v. Parks, 450 F.3d 1059, 1065–66 (9th Cir.2006) (citations and quotations omitted). The undisputed evidence reveals that Mr. Emmons sought to exit the apartment at a time of rapidly developing circumstances at the scene, discussed above, and, as he did, he was instructed by Officer Craig to not close the door. Both officers testified that Mr. Emmons was so instructed and, moreover, the body camera reveals that Mr. Emmons was instructed: "Don't close the door." (McGuinness Decl. Exh. 1 at p.10:11).

In his motion, Mr. Emmons contends that he did not disobey or otherwise obstruct the officers. (Motion at p.23:10-11). However, Plaintiff does not explain how this is so. Not only does the testimony of both officers demonstrate that Mr. Emmons was instructed not to close the door, but objective evidence in the form of the body-worn camera reveals that Mr. Emmons was so instructed. The TAC also alleges that Officer Craig told Mr. Emmons not to close the door before he closed it. (TAC ¶35). While Mr. Emmons may not have "heard" the instruction, or seen the officers outside the door when he exited the apartment, the objective evidence reveals that the officers had probable cause - based on the totality of the circumstances - to believe that Mr. Emmons violated Penal Code §148(a) for resisting and delaying a peace officer who was lawfully attempting to enter the apartment to conduct a welfare check.[3] As such, not only does Mr. Emmons fail to establish a claim for false arrest, but Defendants are

---

[3] The videotape shows that Officer Craig was standing a few feet from the front door when Mr. Emmons hurriedly existed the apartment and Officer Craig instructed Mr. Emmons to not close the door. (Notice of Lodgment, Exh. 1).

1  also entitled to qualified immunity on the false arrest claim as Plaintiff fails to cite any
2  relevant authorities which would provide notice to the officers that their conduct
3  violated Mr. Emmons's constitutional rights.
4       In sum, the court grants summary judgment in favor of Defendants and against
5  Plaintiffs on the false arrest claim (Count 1).
6       Excessive Force
7       Mr. Emmons contends that the officers used excessive force when he was
8  "tackled" to the ground and placed under arrest. He contends that his crime was simply
9  closing the door, he posed no threat to the police officers, and he never actively sought
10 to evade arrest. Plaintiff cites no evidence to support these broad conclusions. (Motion
11 at p.23:17-25). The court concludes that Defendant Officer Craig is entitled to
12 summary judgment on the second prong of the qualified immunity test because relevant
13 legal authorities do not establish that the underlying challenged conduct violates clearly
14 established law.[4]
15      The Fourth Amendment prohibition against unreasonable seizures permits law
16 enforcement officers to use only such force to effect an arrest as is "objectively
17 reasonable" under the circumstances. Graham v. Connor, 490 U.S. 386, 397 (1989);
18 Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1198 (9th Cir.
19 2001). Because the Fourth Amendment test for reasonableness is inherently
20 fact-specific, see Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994) (citing Reed v.
21 Hoy, 909 F.2d 324, 330 (9th Cir. 1989)), it is a test that escapes "mechanical
22 application" and "requires careful attention to the facts and circumstances of each
23 particular case." Graham, 490 U.S. at 396; Fikes v. Cleghorn, 47 F.3d 1011, 1014 (9th

---

[4] As the evidence demonstrates that only Defendant Craig was involved in the excessive force claim, and Plaintiff fails to identify contrary evidence, the court grants summary judgment on this claim in favor of Defendants Craig Carter, Kevin Toth, Huy Quach, Jake Houchin and Joseph Leffinwell on the second cause of action. The excessive force claim against Officer Craig requires further analysis.

Cir. 1995). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

Thus, in order to prove a Fourth Amendment claim of excessive force under 42 U.S.C. § 1983, Plaintiff must present evidence which shows: "(1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the officers or others, . . . (3) whether he [was] actively resisting arrest or attempting to evade arrest by flight," and any other "exigent circumstances [that] existed at the time of the arrest." Chew, 27 F.3d at 1440-41 & n.5 (citing Graham, 490 U.S. at 396).

In all, police officers are not required to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct. See Forrester v. City of San Diego, 25 F.3d 804, 806 (9th Cir. 1994). In fact, an officer's right to make an arrest, as opposed to detaining someone, necessarily includes the right to use some degree of force. Graham, 490 U.S. at 396; Cunningham v. Gates, 229 F.3d 1271, 1290 (9th Cir. 2000); see also Cal. Penal Code § 835a ("A peace officer who attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested.").

On the first prong of the qualified immunity analysis, genuine issues of material fact preclude summary judgment on whether Officer Craig used a reasonable amount of force under the circumstances. Defendants come forward with evidence to show that Mr. Emmons was arrested when he exited the apartment and closed the door to the apartment after being instructed to keep the door open. Defendant Officer Craig testified that he arrested Mr. Emmons for violation of Penal Code §148, and then guided Mr. Emmons to the ground before handcuffing him and then helping him to his feet. This evidence is sufficient to establish that the force applied was reasonable under the circumstances and the burden shifts to Mr. Emmons to demonstrate a genuine issue of material fact.

On the other hand, the testimony of Mr. Emmons, however brief, contradicts Defendants' evidence. Mr. Emmons testified that he was tackled to the ground and injured his back in the process. While this evidence is "thin," it places in dispute the level of force that was used by Officer Craig: was Mr. Emmons "guided" to the ground or "tackled?"[5]

Moreover, a careful review of the videotape of the encounter between Mr. Emmons and Officer Craig reveals that the video is inconclusive on the question of the force applied to Mr. Emmons. The court notes that if a picture is worth a thousand words, a video from the body-worn camera of a law enforcement officer during a "contact" giving rise to litigation may be worth a thousand pictures. Such is the case here. The video shows that the officers acted professionally and respectfully in their encounter with Plaintiffs. However, at the point of Mr. Emmons arrest, Officer Craig was so close to Mr. Emmons that the videotape does not show the force used when Mr. Emmons was physically taken to, or placed on, the ground. The image is not clear enough to make determinations as a matter of law.

The court concludes, however, that even though the evidence is in conflict on the level of force employed ( i.e. whether it was a "guiding" to the ground, a "tackle," or something in between the two), it is the second step of a qualified immunity analysis that is ultimately dispositive in this case.

With respect to qualified immunity, the second step in the analysis is to determine whether the constitutional right being advanced was clearly established in the relevant context such that a "reasonable official would have understood that what he is doing violates that right." Al-Kidd, 131 S.Ct. at 2083. The Supreme Court made clear in Saucier that the "reasonableness of the officer's belief as to the appropriate

---

[5] The court notes that Mr. Emmons does not testify that he was body slammed or punched, only that he was tackled. Mr. Emmons does not explain what he means by the term "tackled." He sheds no additional light on the degree of force applied, or injury suffered, when he was taken to the ground.

1  level of force should be judged from the on-scene perspective." 533 U.S. at 205. In
2  the event a police officer reasonably, but mistakenly, believes more force is required
3  because of a perceived threat, the officer is entitled to qualified immunity. Id. As
4  noted by the Supreme Court:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense

Id.

In Saucier, during a speech by then Vice President Gore at an event to celebrate the conversion of an army base to a national park, the plaintiff displayed a large banner stating "Please Keep Animal Torture Out of Our National Parks." As plaintiff approached a fence separating the spectators from the speakers, two military federal police officers grabbed plaintiff from behind and half-walked and half-dragged him to a nearby military van where he was shoved or thrown inside. In reversing the Ninth Circuit's denial of qualified immunity, the Supreme Court highlighted that the step one analysis (i.e. whether the amount of force used was reasonable) is different from the step two analysis and does not merge into a single inquiry into the "reasonableness" of the force at issue. Noting that there were no clearly established authorities prohibiting defendant from dragging plaintiff and then shoving or throwing plaintiff to the floor of the van, the Supreme Court granted summary judgment on immunity grounds in favor of the officer. The Supreme Court reasoned that the officer did not know the full extent of the threat to the Vice President, there were other potential protesters in the crowd, and there was some degree of urgency. Notwithstanding the dragging and throwing plaintiff to the ground, the Supreme Court granted immunity to the officer noting that there are no legal authorities demonstrating a clearly established rule

prohibiting the officer from acting as he did under the circumstances. Id. at 209.

Here, applying the Graham framework, 490 U.S. at 396, the officers were tasked to perform a welfare check following a 911 call wherein a mother was speaking with her daughter on the telephone when an argument or fight broke out at the apartment and the daughter asked her mother for help when the telephone line went dead. Upon arrival at the scene, Officer Craig learned that the police recently responded to a domestic violence incident at the apartment. Upon arrival, the police officers instructed Ms. Emmons to open the door in order for the police to conduct a welfare check. Ms. Emmons escalated the encounter by refusing to comply with the officers' lawful instructions. The officers called for a supervisor and backup. When an unidentified male exited the apartment, the officers did not know who he was or whether he presented a security threat or whether injured individuals were inside the apartment. When he did not comply with Officer Craig's order to not close the door in this rapidly escalating series of events, Officer Craig testified that he guided Mr. Emmons to the ground and arrested him. Mr. Emmons testified that he was tackled to the ground. Mr. Emmons provides no further description of the events leading to his being placed on the ground. A "tackle," in the context of football means "to seize and bring down (another player)." Webster's II New College Dictionary 1121 (1995). A tackle is not synonymous with excessive force. There is no evidence that Mr. Emmons was body-slammed, treated sadistically, or otherwise subject to excessive force, only that Mr. Emmons was taken to the ground and handcuffed.

Under qualified immunity principles, Plaintiff fails to cite any legal authorities for the proposition that guiding or even tackling an arrested individual to the ground under similar, or the present circumstances, is unconstitutional. There are simply no cited legal authorities clearly establishing that the tackle or take-down of Mr. Emmons violates the Fourth Amendment. Further, in the absence of authorities, the officers were not provided with "fair warning that their conduct was unlawful." Elliot-Park v.

Mangola, 592 F.3d 1003, 1008 (9th Cir.2010). As the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," Malley, 475 U.S. at 341, the court finds that Officer Craig is entitled to qualified immunity on Mr. Emmons's excessive force claim brought under 42 U.S./C. §1983.

In sum, the court grants summary judgment in favor of Defendants Craig Carter, Kevin Toth, Robert Craig, Huy Quach, Jake Houchin and Joseph Leffinwell, and against Plaintiffs, on the First, Second, and Third Causes of Action.

**IT IS SO ORDERED.**

DATED: March 2, 2016

Hon. Jeffrey T. Miller
United States District Judge

cc:       All parties